UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AMY E. VLASIC, Personal Representative for the Estate of Carl Cyrus Dietz, <br><br> Plaintiff, <br><br> v. <br><br> WYNDHAM INTERNATIONAL, INC., WYNDHAM MANAGEMENT CORPORATION, and WYNDHAM ARUBA BEACH RESORT & CASINO, <br><br> Defendants. | Case No. 06-4037 |

## ORDER

Before the Court is Defendants Wyndham International, Inc. and Wyndham Management Corporation's ("Defendants") Motion to Dismiss for *Forum Non Conveniens*. For the reasons set forth below, Defendants' motion is GRANTED.

## JURISDICTION

**This Court has jurisdiction** pursuant to 28 U.S.C. § 1332. Plaintiff is the duly appointed personal representative of the estate of Carl Cyrus Dietz ("Dietz"). At the time of his death, Dietz was a citizen of the State of Illinois and a resident of Rock Island, Illinois. Plaintiff is a resident of Kansas. Defendant Wyndham International, Inc. is a Delaware corporation with its principal place of business in New Jersey. Defendant Wyndham Management Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business in New Jersey. At the time that the incident in this case took place, both Wyndham International, Inc. and Wyndham Management Corporation had their principal places of business

in Texas. Wyndham Aruba Beach Resort & Casino is an Aruban business. The amount in controversy exceeds $75,000.

## BACKGROUND

On January 26, 2005, Dietz was visiting Aruba as part of an excursion from a Caribbean cruise. While in Aruba, Dietz spent some amount of time at the Wyndham Aruba Beach Resort and Casino in Palm Beach, Aruba ("the Resort"). However, the nature of Dietz's visit and his connection to the Resort are not clear, as Dietz was apparently not a registered guest there. While at the Resort, Dietz relaxed in one of the chairs provided by the Resort near the Resort's swimming pool, in the vicinity of a palm tree. While he was relaxing, the palm tree fell over, severely injuring Dietz and others. The tree landed on top of Dietz, pinning him to the ground and causing him massive injuries. Despite the massive injuries, Dietz survived for a period of time while Resort guests and staff members attempted to provide him with assistance. In spite of this assistance, Dietz died later that same day as a result of the injuries that he received from the fallen tree.

Plaintiff, on behalf of Dietz's estate, filed this lawsuit on May 1, 2006, against Defendants. This case was originally filed in Illinois state court, and Defendants Wyndham International, Inc. and Wyndham Management Corporation removed to this Court on June 12, 2006. Defendant Wyndham Aruba Beach Resort & Casino has not yet been served. In the Complaint, Plaintiff alleges that Defendants are liable to the estate because they violated the Illinois Wrongful Death Act, Illinois common law negligence laws, the Illinois Survival Statute, and the Illinois Family Expense Statute.

On August 1, 2006, Defendants filed the instant Motion to Dismiss for *Forum Non Conveniens*. Plaintiff promptly responded. The Court heard oral argument on September 11, 2006, and this Order follows.

**DISCUSSION**

The doctrine of *forum non conveniens* allows a trial court to "dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (quoting *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997)). Usual *forum non conveniens* analysis consists of a two-step inquiry: first, a court will determine whether an adequate alternative forum is available; second, the court will then weigh the private and public interest factors related to the proper location of the litigation. *Hyatt International Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). The defendant carries the burden of persuading the court that a lawsuit should be dismissed on forum non conveniens grounds. *In re Ford Motor Co., Bridgestone/Firestone North American Tire*, 344 F.3d 648, 652 (7th Cir. 2003).

**A.    Adequate Alternative Forum**

The first step in any *forum non conveniens* inquiry is to decide whether an adequate alternative forum exists. *Kamel,* 108 F.3d at 802. "An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Id.* at 803 (internal cite omitted).

Defendants argue that Aruba is an available forum because Wyndham International and Wyndham Management, which now both have their principal places of business in New Jersey,

will submit to the jurisdiction of Aruba and waive any statute of limitations defenses to Plaintiff's claims. Second, Defendants argue that Aruba is an adequate forum because even though Dutch law (which governs in Aruba) offers Plaintiff the possibility of recovering fewer damages than Illinois law, the Aruba courts provide Plaintiff with an adequate system for redress. In Plaintiff's written Response to Defendants' Motion to Dismiss and at oral argument, Plaintiff did not dispute the adequacy or availability of Aruba as a forum for this litigation. Plaintiff merely focuses on the public and private interests at stake. Accordingly, the Court finds that Aruba is an acceptable forum and will proceed to the second step of the analysis.

B.    **Balancing Public and Private Interests**

The second step of the *forum non conveniens* analysis requires the court to determine whether to keep or dismiss the case by weighing various private and public interest factors. *In re Bridgestone/Firestone, Inc.*, 420 F.3d at 704. "The private interest factors include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interest factors include the local interest in having controversies decided "at home," the interest in trying a diversity case in the forum that is familiar with the law that governs that action, the interest in avoiding complex conflict of laws problems or the application of foreign law, and "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981).

The application of the private and public interest factor varies between cases, and the final outcome is "heavily dependent on the unique facts of particular cases." 15 Wright, Miller

and Cooper, Federal Practice and Procedure, § 3828 (1986).  Therefore, in its discretion, this Court must carefully weigh these factors, none of which is alone determinative, to ascertain whether the balance is "strongly in favor of the defendant." *Gulf Oil*, 330 U.S. at 508.

Prior to addressing each of the factors, however, the Court recognizes that there is a strong presumption that the plaintiff's choice of forum will be upheld, especially in situations where the plaintiff chooses his home forum. *Santora v. Starwood Hotel and Resorts Worldwide, Inc.*, 05-C-6391, 2006 WL 1371432, at *2 (N.D.Ill. May 15, 2006) (citing *Gulf Oil Corp.*, 330 U.S. at 508); *see also Hyatt Int'l Corp. v. Coco,* 302 F.3d 707 ("A certain deference is due to the plaintiff's choice of forum with respect to convenience.").  Still, the Supreme Court has instructed,

> [a] citizen's forum choice should not be given dispositive weight . . . . dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the court, dismissal is proper.

*Piper Aircraft*, 454 U.S. at 255–56 n.23 (internal citations omitted); *see also Colantino v. Hilton Int'l*, 2004 WL 1810291 at *3 (E.D. Pa. 2004) ("[C]ourts within this District and elsewhere have held that where the operative facts giving rise to the action occur outside of the forum selected by the plaintiff, the deference given to plaintiff choice of forum is somewhat reduced.").

    **1.**    **Private Interest Factors**

Here, both sides present compelling arguments regarding the ease of access to the proof in this case.  The accident occurred in Aruba, and Defendants maintain that the majority of the evidence in this case is located in Aruba.  With respect to documentary evidence, the Defendants argue that all of the documentation regarding the investigation of the accident is in Aruba and will have to be translated into English.  In response, Plaintiff rightly points out that this

documentary evidence can easily be transported to Illinois without significant difficulty. Plaintiff further argues that the documentary evidence relevant to damages—various papers in the possession of Plaintiff's estate—is located in Illinois.

With respect to witnesses, the parties disagree on the relative convenience of the competing forums, in part, because they disagree on what they expect to be the key issues for trial. Plaintiff predicts that liability will not be the highly disputed part of the trial, but rather that the most contentious issues of the trial will focus on damages, and the damage witnesses will mostly be in Illinois. Plaintiff also argues that not all of the liability witnesses are in Aruba because many who observed the accident were hotel guests who are no longer in Aruba, but rather are probably scattered around the United States, Canada, or Europe, and therefore, Illinois is no less convenient of a forum than Aruba for these witnesses.[1] Defendants dispute that damages will be the main issue of the trial and argue that the majority of the liability witnesses are in Aruba. Specifically, Defendants argue that hotel employees, EMTs and others providing medical attention, independent landscapers who were allegedly charged with maintaining the tree, and Aruban government officials who investigated the accident are all located in Aruba.

A separate but closely connected issue to the location of the many potential witnesses is the availability of compulsory process. Defendants do recognize that some of the hotel guests may be scattered in various jurisdictions but argue that the liability aspect of this case will turn on the testimony of the landscapers, the hotel staff who worked near the pool at the time in question, and the Arubans who investigated the accident. Defendants assert that there is no reason to believe that these Arubans will be amenable to service or be willing to travel to Illinois

---

[1] At oral argument, Plaintiff's counsel also posited that an Aruban forum would be especially burdensome for the decedent's family members because of the emotional strain of returning there. The Court is not unsympathetic to the difficulties the decedent's family experienced following Mr. Dietz's death but the Court's sympathy can not control the Court's legal conclusion regarding the proper forum for this litigation.

6

to testify. In response, Plaintiff argues that some of the Aruban witnesses are Resort staff, who are employees of the Defendants, and therefore compulsory process would probably not be necessary for those individuals. However, the parties have indicated that summons to the Resort have yet to be returned, and the Resort is not presently an active party in this lawsuit. Additionally, Plaintiff notes that there are alternative means of presenting live testimony, such as the use of admissions. In turn, Defendants further point out, however, the general preference for live testimony.

The next private interest factor is the "possibility of view of premises, if view would be appropriate to the action." Both parties' briefs address this issue. Defendants imply that it may be necessary for someone from each party to have a first-hand view of the hotel and pool. Plaintiff argues that the physical layout of the hotel premises can be established through photographs, models, to other demonstrative evidence. At oral argument, however, both parties conceded that an actual view of the premises would probably not be essential to trial (especially since the tree in question was apparently destroyed) and that this factor did not merit significant weight in the *forum non conveniens* analysis of this case. Therefore, the Court will not assign it such weight.

In total, the availability of sources of proof favors dismissal. It is true that the documentary evidence is transferable and parties would likely have to translate reports and medical records regardless of the forum, so this itself does not weigh strongly toward dismissal. In evaluating the witness issues, the Court is somewhat hindered by the speculative nature of parties' descriptions of the necessary evidence for trial. But, the Court does believe that Defendants' liability will be a highly disputed issue and cannot understate the value of live testimony of key witnesses "for the purposes of presenting demeanor evidence essential to a fair

trial." *Iragorri v. Int'l Elevator*, 203 F3d 8, 17 (1st Cir. 2000) (further recognizing that a language barrier might prevent an American jury from evaluating witness credibility). The crucial liability witnesses, such as the officials who investigated the accident and the landscapers who maintained the tree, aren't apparently subject to compulsory process.² Moreover, the parties will incur substantial expense in bringing to Illinois those who *are* amenable to process.

Another private interest factor to take into consideration is the ability to implead other entities. *See Piper Aircraft*, 454 U.S. 276–68. Defendants believe that it will be necessary to implead the outside landscaping company that was responsible for planting and maintaining the tree and that only courts in Aruba and not Illinois will have jurisdiction over this company. Similarly, the EMTs who attended to the decedent may share in any potential liability to Plaintiff, and Illinois will probably not have jurisdiction over these persons either. Plaintiff argues that Defendants' inability to implead third-parties is not dispositive because it does not take into account the Plaintiff's convenience. Plaintiff also argues that Defendants will be free to bring a contribution or indemnification action against the landscaping company in Aruba, if and when, Defendants are found to be liable to Plaintiff.

A defendant's inability to implead a third party is certainly not dispositive. *See Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343–44 (8th Cir. 1983). Still, judicial economy favors resolution of all claims in one trial. Litigating all claims in Aruba avoids a scenario in which Defendants would pursue their claims for contribution against the landscaping company in Aruba while defending the action against Plaintiff in the United States, without compulsory process to obtain key witnesses. *See Morse v. Sun Int'l Hotels*, 2001 WL 34874967 at *4 (S.D.

---

² At oral argument, Plaintiff's counsel stated that it is believed that Mr. Dietz suffered some amount of time between the injury and his death, and this suffering would be factored into a damages figure in this case. Especially relevant to this damages issue would likely be the testimony of EMTs or medical personnel who attended to Dietz before his death. These damage witnesses would probably also not be amenable to compulsory process.

8

Fla. Feb. 26, 2001).  While Defendants, if found liable in this Court, may seek contribution from the landscaping company in Aruba, this approach runs the risk of inconsistent verdicts.  *See Piper Aircraft*, 454 U.S. at 243.  In the interests of judicial economy, this factor leans toward dismissal.  *See Iragorri*, 203 F.3d at 15 (inability to implead favors dismissal); *Fitzgerald v. Texaco*, 521 F.2d 448, 453 (2d Cir. 1975) ("The inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction . . . ."); *Kristoff v. Otis Elevator Co.*, 1997 WL 67797, at *3 (E.D. Pa. Feb. 14, 1997) (dismissing Pennsylvania resident's action against Bahamian company based in part on the inability to implead third parties).  *But see Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991) (reversing forum non conveniens dismissal in personal injury action brought by Minnesota plaintiff against Missouri defendants who owned and operated facilities in Jamaica, despite inability to implead because the putative cross-claims were "independent" from the underlying claim).

In viewing the totality of private interests, including the administrative and practical difficulties of retaining this case in Illinois, the Court finds that the balance of conveniences favors dismissal, and will next examine the public interest factors in this case.

### 2. Public Interest Factors

The public interest factors articulated by the Supreme Court in *Gulf Oil* also favor dismissal.  Defendants argue that these factors favor dismissal because the substantive law of Aruba will apply in this case. Defendants also assert that Aruba has a vested interest in this litigation because the accident occurred in Aruba, and the Illinois courts are congested.  Additionally, Defendants note that other courts have found that a lack of a jury trial in the "foreign" jurisdiction is not a reason to deny dismissal.  In response, Plaintiff argues that

Illinois' interest in this case is stronger than that of Aruba because an Illinois resident was killed during the course of business with the foreign hotel. Plaintiff also argues that even if Defendants' choice of law analysis is correct, the fact that a federal court may be required to apply foreign law is not dispositive on the *forum non conveniens* issue.

Admittedly, both Illinois and Aruba have a vested interest in the outcome of this litigation. However, the interest of an Aruban Court in adjudicating this matter far outweighs any interest of this forum. Although Illinois undoubtedly has a vested interest because an Illinois resident was killed, this is secondary to the interests of Aruba, which has a strong interest in providing in a safe environment for tourists who visit there and assessing the liability of companies who conduct business there. *See Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 555 (E.D. Va. 1996). The case's connection with an Illinois forum is highly tenuous. Other courts confronting similar facts have recognized a viable connection with a Plaintiff's domestic forum when a trip was booked, and the relationship between the parties was formed, in that forum. *See, e.g.*, *Wilson v. Humphrey's Cayman*, 916 F.2d 1239, 1247 (7th Cir. 1990); *Santora v. Starwood Hotel and Resorts Worldwide*, 2006 WL 1371432 (N.D. Ill. May 15, 2006). Here, as explained above, decedent Dietz was not even a registered guest of the Resort. Any relationship between Dietz and the Resort appears to have been formed in Aruba. The only connection between this action and Illinois is that the decedent resided here before his death. Thus, the controversy of this case is truly "localized" in Aruba.

Defendants next argue that due to Illinois' use of the "significant relationship" test for choice-of-law questions in tort cases, Aruban law would govern this case. Plaintiff does not concede this nor argue otherwise, but instead points out that federal courts are regularly called upon to apply the law of other jurisdictions. In the Court's brief review of the choice-of-law

factors, Aruba does appear to have the most significant relationship to the dispute. *Coats v. Hertz Corp.*, 695 N.E.2d 76, 77 (Ill. Ct. App. 1998) ("The application of the most-significant-relationship test requires a court to consider: (1) the location of the injury; (2) where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) where the relationship of the parties is centered."). While this factor is not dispositive, *Lehman*, 713 F.2d at 345, it does weigh toward dismissal, especially in light of the additional burden, delay, and expense that would be placed upon the parties and the Court in applying unfamiliar law.

In the end, both parties are able to make persuasive arguments for and against dismissal. Given the nature of the case, the Court finds that Defendants have met their burden of overcoming the presumption that Plaintiff's choice of forum is convenient, a presumption that is weakened by the fact that the vast majority, if not all, of the operative facts occurred in Aruba, and any relationship between Dietz and Defendants appears to have been created and centered there. The Court is not without sympathy for the Plaintiff, but because trial in Illinois would be unnecessarily burdensome for the Defendant and the Court, dismissal is proper, and Defendants' Motion to Dismiss for *Forum Non Conveniens* is granted.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for *Forum Non Conveniens* [#7] is GRANTED.

ENTERED this 19th day of September, 2006.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge